MATTER OF MAZAR

In DEPORTATION Proceedings

A-10425815

*Decided by Board August 17, 1962*

Respondent, a native and citizen of Yugoslavia, who obtained her visa by fraud and misrepresentation in willfully concealing her membership in the Communist Party of Yugoslavia from 1944 to 1954, is not deportable under section 241(f) of the Immigration and Nationality Act, as amended, since, apart from her misrepresentation, she was otherwise admissible at the time of entry, her Communist Party membership having been involuntary within the meaning of section 212(a)(28)(I)(i) of that Act because in order to safeguard her life she joined the Communist Party in response to demands made on her to join in view of her officer rank in the Yugoslav military forces and her continued service in the Yugoslav army after her marriage and the birth of her children was because of financial needs; there is an absence of any expression on her part of ideological sympathy with the Communist Party, and there is a lack of any indication that she ever occupied a position of political responsibility in the Communist Party itself.

CHARGES:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry under section 212(a)(19)—Visa obtained by fraud or by willfully misrepresenting a material fact.
Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry under section 212(a)(28)—Member or affiliated with the Communist Party of a foreign state, to wit, the Communist Party of Yugoslavia.

The case comes forward upon certification by the special inquiry officer of his order dated May 31, 1962, terminating the proceedings.

The record relates to a native and citizen of Yugoslavia, 39 years old, female, married, who was admitted to the United States for permanent residence on August 9, 1955, upon surrender of a nonquota immigrant visa issued to her on June 29, 1955. Deportation proceedings were thereafter instituted charging that she was deportable because excludable at time of her entry in that her visa was obtained by fraud and or misrepresentation in concealing that she had been a member of the Communist Party of Yugoslavia from January 1944 to

about September 1, 1954, and also on the ground that she was excludable by reason of prior membership in the Communist Party of Yugoslavia. After hearing, the special inquiry officer on April 6, 1961, terminated the deportation proceedings upon a finding that the respondent's membership in the Communist Party of Yugoslavia was involuntary and, since she was otherwise admissible at the time of her entry, she was not subject to deportation on the visa fraud charge because of the provisions of the first portion of section 7 of the Act of September 11, 1957. Upon appeal by the examining officer the Board of Immigration Appeals by order dated October 19, 1961, reopened the proceedings for consideration of the case in the light of the new standard concerning misrepresentation laid down by the Attorney General in *Matter of S— and B—C—*, Int. Dec. No. 1168 (October 2, 1961). It was further directed that the decision of the special inquiry officer be certified to the Board.

The respondent has admitted that she was a member of the Communist Party of Yugoslavia from January 1944 to about September 1, 1954, and that in applying for her immigrant visa she knowingly and wilfully concealed her previous membership in the Communist Party of Yugoslavia because she believed the disclosure of that fact would result in the refusal of an immigrant visa by the American Consul. She also testified that she concealed such membership in her application for naturalization because she was afraid of being deported.

The situation herein is similar to that of the alien S— in *Matter of S— and B—C—*, Int. Dec. No. 1168, who likewise concealed Communist Party membership, albeit in Hungary, and who likewise defended such membership on the ground that it was involuntary within the meaning of section 212(a)'(28)'(I)(i) of the Immigration and Nationality Act. The Attorney General held that it was obvious that disclosure of the alien's Communist Party membership in connection with his visa application would have raised a serious question as to the alien's admissibility and would have been likely to lead to further investigation of the question of whether his membership was voluntary or involuntary. The Attorney General stated that he was not required to decide the question of whether the alien's Communist Party membership was necessary to enable him to obtain employment, food rations or other essentials of living, or merely convenient in the sense that it facilitated his obtaining education and bettering his status in life, since it was obvious that had the alien stated the true facts in the application for his visa, it would inevitably have lead to investigation which might have lead to a proper denial of the visa. The Attorney General found that the alien's failure to disclose his Communist Party membership was a material misrepresentation

which rendered him excludable under section 212(a)(19). However, the charge under section 212(a)(19) is rendered moot in the instant case because the alien herein, as the spouse and parent of a United States citizen husband and minor child, is automatically entitled to the benefits of section 241(f) of the Immigration and Nationality Act, as amended, which provides that the provisions of that section relating to the deportation of aliens within the United States on the ground they are excludable at the time of entry as aliens who sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation, shall not apply to an otherwise admissible alien with the family ties that the respondent possesses.

It therefore becomes necessary to decide whether the respondent is otherwise admissible. Membership in the Communist Party of Yugoslavia has been admitted. The respondent seeks to excuse such membership on the ground it was involuntary within the meaning of section 212(a)(28), which provides that the alien must establish to the satisfaction of the Attorney General that she falls within this exception.[1]

The evidence concerning the respondent's membership in the Communist Party of Yugoslavia is predicated upon her own testimony and the testimony of her husband. The special inquiry officer, as the trier of the facts, had an opportunity to observe the demeanor of the respondent and of her husband and to form a proper belief as to their credibility, and the weight to be attached to their testimony. Even though the testimony may be said to be in a sense, self-serving, in view of the finding of credibility, it cannot be lightly ignored. The respondent has explained the circumstances under which she joined the Yugoslavian Partisan Army in 1941. At that time, when between 18 and 19 years old, she set forth to look for her younger brother whom she found with an armed group composed of those who were fleeing from the Ustashi (Croation Fascists). This was not a regular army organization because at this period there was no regular national army existing in Yugoslavia. Her brother urged her to remain with him and join the group in order to avoid capture by the Ustashi. No political affiliation was necessary in order to become a part of this group. She testified that she and her brother were the only Slovenians in the organization, the rest of the group being composed of Serbians. Thereafter splits developed in the group and she and her brother were viewed with suspicion by some of the Chetniks in the group and defended by others. She and her brother joined a group of Chetniks who broke away from the organization and formed a Partisan force known as the Crnovrska Ceta. Later larger groups were formed and

---

[1] *Matter of V—*, 8 I. & N. Dec. 554.

at the end of 1941 all of the groups were incorporated in the National Army of Liberation under the supreme command of Tito. After the groups were unified, a chain of command was established and all those serving in the National Army of Liberation were subject to military discipline. The respondent was originally a nurse in the Crnovrska Ceta and later became chief of the sanitary or medical unit of her battalion but held no grade until the beginning of 1944, when she became a 2nd lieutenant. She was not yet a member of the Communist Party of Yugoslavia at that time.

The respondent testified that while serving in the Partisan forces she had raised objections to the Communist ideology during lectures given by the commissar and the commander of her company. In 1943 a critical situation in the Communist Party movement resulted in liquidation of those not considered trustworthy. She herself was regarded with suspicion because of the criticism she had voiced. She had been warned by the youth organization leader to stop her criticism lest she be killed and was advised to join the Communist Party to save her life. Early in 1944 her commanding officer told her that her position required Communist Party membership. The respondent testified that she felt she had no choice other than to join the Communist Party in order to safeguard her life. In view of the evidence that others had been dealt with harshly, it is not believed that the respondent should have been required to enact the role of a martyr in defying those in authority. She has testified that she never embraced Communist ideology, and that her acceptance into the Communist Party was without a probationary period because of her service in the Partisans. She was not assigned any special duties on the basis of her Communist Party membership nor was she active in the political segment of the Communist Party. She was required to read certain material. The respondent testified that her continued service in the Yugoslavian Army after her marriage and the birth of her children was because of financial needs because her husband was still studying medicine and they could not live on his salary alone; that because of their positions in the military forces they were able to obtain a little more food than civilians and pay less for it. The respondent testified that in 1944 she received the Partisan badge of 1941, known as "Spomenica," which was awarded to those who took part in the National Liberation Army in 1941 and carried with it certain benefits, such as a month's vacation with pay, reduction in train fares, and scholarships in schools available for children. She testified that this award was not limited to those who were Communists and this statement was confirmed by the government witness, Charles Petkovic.

The respondent testified that she was found to be unsuited for nursing work and in 1947 took a training course in the administrative

department of a hospital and became personnel officer or counselor and was assigned as a personnel counselor in connection with civil division of a hospital. Her duties consisted of hiring civilians for various minor hospital tasks such as cleaning people, nurses aides, etc. In 1950 she took a leave of absence for one year because she was suffering from tuberculosis and thereafter was transferred to Zagreb where she was employed in the cultural division of the army in connection with the disbursement of books to the armed forces. During this period she obtained the rank of captain. In 1952 she was assigned to a job of eliminating books with Russian titles and ideas to avoid the distribution of those books to army personnel and was a member of a commission consisting of five members. From January 1953 until she left the army in 1954 she was head of the clerical department of a quartermaster distribution center and during this period was promoted to captain, first class, an automatic promotion based upon three years of service in the lower category.

The respondent produced evidence that her sons were baptized in April 1947 and July of 1957 in Bihac, Yugoslavia, and that she was present at their baptism although the Yugoslavian government and particularly the Communist Party of Yugoslavia, opposed any religious observance. In addition she attended Catholic church services out of uniform because of the opposition of the government to such attendance by army officers. She was able to secure her release from the Yugoslav army in 1954 by presenting a medical certificate indicating she was not in good health due to a more lenient attitude toward women but that she experienced considerable difficulty in obtaining a passport for the purpose of leaving Yugoslavia to the extent that she was asked to leave one of her children in that country. After considerable delay she was able to secure an exit permit limited to a one-year period through the help of a friend of her husband who guaranteed she would return to Yugoslavia.

The continued membership of the respondent in the Yugoslavian army and in the Communist Party of Yugoslavia cannot be assessed apart from the role played by her husband. Her husband, although born in the United States in 1918, was taken to Yugoslavia in 1932. They met in 1942 when he was serving as the head of a medical department of a brigade of Partisan forces. They reported their marriage in 1943 or 1944 to the unit commander and went through a marriage ceremony in June 1946. Her husband testified he was asked to join the Communist Party in February 1944 and since he was aware that people holding similar positions to his who had refused to join had disappeared, he felt compelled to join the Communist Party. In further explanation of his joining the Communist Party, the husband testified that the commissar of his army unit told him in December of

83

1943 that it was time he became a member of the Communist Party and in January or February 1944 was again approached and told that the position he was taking over required that he be a member of the Communist Party. Since he knew what would happen if he declined he consented. Her husband testified that both he and the respondent discussed the Communist Party in 1945 and expressed concern over the developments in their country and their disagreement with the principles of the Communist Party. He applied for discharge in 1945, 1947, and 1952 but was refused because of the shortage of physicians. He was required to turn in his Communist Party membership documents when he claimed foreign citizenship at the time of his discharge from the Yugoslav army but was required to obtain an exit permit to leave Yugoslavia because he was regarded by them as a dual national. He was told he would be contacted in this country for favors by the Yugoslav government but testified that no one has ever contacted him.

After coming to the United States in 1954 he applied for an extension of his Yugoslav passport for the purpose of aiding his wife in leaving that country. Both parties have testified that they unsuccessfully applied for discharges from the Yugoslav army in 1945. Although a United States passport was approved for issuance to the respondent's husband on April 7, 1947, it was not used by him because he could not obtain his release from the Yugoslav army. Before leaving Yugoslavia the husband had been trying to help his wife obtain a permit to leave Yugoslavia and had made arrangements with a friend of his to intervene in her behalf with the Department of External Affairs which controlled the issuance of passports in Yugoslavia. Viewed against the background of the husband's attempts since 1945 to obtain permission for his wife and family to leave Yugoslavia, and ultimately, to join him in the United States, it is not surprising that the respondent took no steps in regard to her Communist Party membership which would jeopardize her chances of leaving Yugoslavia.

The respondent has presented witnesses who have testified favorably with respect to her conduct in the United States and her opposition to the Communist regime now in control in Yugoslavia. Although the respondent has acknowledged that Communist Party membership was required of an officer in the Yugoslav army, there is no evidence that she ever expressed any ideological sympathy with the principles of Communism and the record is devoid of any indication that she ever occupied a position of political responsibility in the Communist Party itself.

The government has presented two witnesses in an attempt to rebut the testimony of the respondent that her membership in the Communist Party of Yugoslavia was involuntary. The first witness,

Charles Petkovic, was not a member of the armed forces of Yugoslavia during World War II nor a member of the Communist Party of Yugoslavia during that period, and his opinions with respect to the compulsion exercise upon an officer of the army by the Communist Party is, as the special inquiry officer observed, of little value. He did however corroborate in a good deal of the testimony of the respondent and her husband as to the mixed and irregular character of the Yugoslavian army in 1941 or 1942 and admitted that some Partisans were not Communists and that the "Spomenica," award was not limited to Communists but was given to all those who took part in the Partisan movement in 1941. The witness expressed the opinion that a person could not occupy a personnel position from 1950 to 1954 if under suspicion by the Communists. However, the respondent's personnel hospital work appeared to involve only civilian help of the lowest types, such as cleaning people and nurses aides. While testifying generally that persons who joined the Communist Party in Yugoslavia during World War II believed in Communism, he acknowledged that within military groups the discipline was greater than among the civilian population.

A second government witness, Boris Miletich, who was employed in Yugoslavia variously as a legal referee, law counselor, and a county judge from 1945 to 1956, stated that he had never been a member of the Communist Party and had not served in the Yugoslav army. His information therefore regarding the situation in the Yugoslav army is admittedly hearsay. While testifying that many persons were discharged from the Yugoslav army after 1946 and that females especially were released, he admitted not knowing whether a female officer could have been discharged during that period of time and also conceded that not all persons who fought in the Partisan groups in 1941 and thereafter were Communist. The respondent's husband has testified that the criterion in obtaining release from military service was whether the person's service was essential.

A witness on behalf of the respondent, Fedor Hegenauer, served in the Yugoslavian army in 1945 and again in 1947 but not as an officer. When asked to join the Communist Party in 1947 he temporized although indicating that he could not have refused. He was of the opinion that an officer in the Yugoslavian army would have no choice and could not possibly refuse when asked to join the Communist Party by his battalion commander in January 1944.

The service has contended that the respondent's admission of membership in the Communist Party of Yugoslavia should be accepted at full value but that her testimony as to the involuntary nature of her membership is to be discounted. Inasmuch as no documentary evidence has been submitted, the decision turns largely upon a finding

of credibility of the witnesses, and the weight to be attached to their testimony. Viewing the circumstances surrounding the respondent's joining the Yugoslav military forces, the Partisans, the subsequent demand that she join the Communist Party because of her officer rank, the absence of ideological sympathy with the Communist Party and the lack of any political position in the Communist Party, and the corroboration by witnesses, we do not believe that her story has been materially weakened or overcome by the government witnesses. It is concluded that the respondent has established that her membership in the Communist Party, upon the evidence of record, was involuntary within the meaning of section 212(a)(28)(I)(i) of the Immigration and Nationality Act. She was therefore not excludable at the time of entry because of membership in the Communist Party of Yugoslavia and was otherwise admissible. She is therefore automatically the beneficiary of the provisions of section 241(f) of the Act in regard to her misrepresentation regarding her Communist Party membership.

ORDER: It is ordered that the order of the special inquiry officer dated May 31, 1962, terminating the proceedings be and the same is hereby approved.