## MATTER OF HAJDU

### In Deportation Proceedings

#### A-20202102

*Decided by Board April 11, 1978*

(1) In determining whether respondent's membership in the Communist Party of Hungary falls within the proviso contained in section 212(a)(28)(I) of the Immigration and Nationality Act, 8 U.S.C. 1182(a)(28)(I), concerning "involuntary" membership, the fact that respondent was already employed at the time he joined the Party would not necessarily render him inadmissible for permanent residence and ineligible for adjustment of status. (Case remanded for fuller development of record below.)

(2) In adjustment of status proceedings, the burden is upon the respondent, as an admitted member of the Communist Party of Hungary, to establish that he is eligible for permanent residence under the proviso in section 212(a)(28)(I) concerning "involuntary" membership. The "meaningful association" test of Communist Party membership enunciated by the Supreme Court of the United States in *Galvan v. Press*, 347 U.S. 522 (1954) and subsequent cases arose in the context of deportation proceedings (where the Government bears the burden of proof) and it has no direct application in an adjustment of status case.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant visitor— remained longer

ON BEHALF OF RESPONDENT:
Harry P. Anestos, Esquire
7315 Wisconsin Avenue, N.W.
Suite 323-E
Washington, D.C. 20014

Attorney of record:
Deidre Magnello, Esquire
Robinson, Robinson & Cole
799 Main Street
Hartford, Connecticut 06103

ON BEHALF OF SERVICE:
Jay D. Steinberg
Acting Appellate Trial Attorney

BY: Milhollan, Chairman; Appleman, Maguire, and Farb, Board Members

In a decision dated September 28, 1976, an immigration judge found the respondent deportable as charged and granted his application for the privilege of voluntary departure in lieu of deportation on or before October 28, 1976. He also denied his application for adjustment of

status. The respondent has appealed from that part of the immigration judge's decision finding him ineligible for adjustment. Oral argument was held on October 27, 1977. The record will be remanded.

The respondent is a 45-year-old male, native of Greece and citizen of Hungary, who was admitted to the United States on July 9, 1974, as a nonimmigrant visitor for pleasure. His spouse and three children are residing in Budapest, Hungary. The respondent is the beneficiary of a fifth-preference visa petition filed by his sister, a United States citizen, which was approved on January 22, 1975.

The only issue raised on appeal is the immigration judge's finding that the respondent is not admissible for permanent residence due to his membership in the Hungarian Communist Party.

The following details concerning the respondent's background were supplied by his hearing testimony and sworn statements on two different occasions: in an affidavit executed on July 12, 1976 (Ex. 4), and in an affidavit before a Service official (Ex. 8) executed on January 22, 1975.

The respondent came to Hungary as a refugee from Yugoslavia in 1950. From 1950 until 1952 he attended a trade school while working in a refugee camp. In 1953 he obtained employment in a dynamo factory with the help of another Greek refugee. He stated that this person and three other Greek refugees exerted continuous pressure on him to join the Communist Party so that he would be able to move into better jobs with increased job benefits. His employer also joined in these efforts. In late 1956, at the age of 24, the respondent joined the Communist Party. He testified that his job would have been taken away from him if he had not joined (Tr. p. 16). According to the respondent, at that time he and his family [1] lived in a small room and had "absolutely nothing" (Tr. p. 15).

A few months after joining the Communist Party, the respondent was transferred to a newer factory with better working conditions and increased pay. From 1972 until 1974, when he left to come to the United States, the respondent worked at a refrigerator repair factory at twice the salary he had received at his former job.

The respondent testified that his participation as a member consisted of attending compulsory meetings two or three times a year and paying dues, also compulsory, which were deducted from his salary (Tr. p. 16). When he applied for a nonimmigrant visa, he disclosed the fact of his Communist Party membership and was granted a temporary waiver of inadmissibility. At the hearing the respondent introduced the original and translation of a letter from his brother-in-law in Hungary informing the respondent that he had been told by his boss in October of 1974 that

---

[1] The respondent was married in 1952, divorced in 1966, and remarried in 1969. His children were born in 1954, 1957, and 1961.

the respondent had been expelled from the Communist Party. The writer stated that a Communist Party official had confirmed this action (Ex. 5).

Under section 212(a)(28)(I) of the Act, 8 U.S.C. 1182(a)(28)(I), membership in, or affiliation with, a Communist or other subversive organization will not be a bar to admissibility if "(i) such membership or affiliation is or was involuntary, or is or was solely when under sixteen years of age, by operation of law, or for purposes of obtaining employment, food rations, or other essentials of living and where necessary for such purposes . . . ."

The immigration judge concluded that the respondent already had the "necessities of life" when he joined the Communist Party and that the prospect of gaining a better job and higher wages did not make his membership involuntary, within the meaning of section 212(a)(28)(I)(i) of the Act, 8 U.S.C. 1182(a)(28)(I)(i). Although he recognized that Communist Party members in a Communist-controlled country enjoy "greater privileges" than nonmembers, the immigration judge noted that the respondent's reason for joining "might be applied in the case of every alien who joins the Communist Party."

The respondent maintains that his sole motivation for joining the Communist Party was economic compulsion and that his membership was devoid of any political implication. He asserts that his Communist Party membership should not preclude him from being granted adjustment of status.

Our review of the record convinces us that further exploration of this issue is warranted. Although the respondent did testify that he was encouraged to join the Party to improve his job opportunities and working conditions, he also stated that he would have lost his job if he had not joined (Tr. p. 15). This claim was also made during his interview by a Service official on January 22, 1975 (Ex. 8).

By qualifying the type of Communist Party membership that will preclude an alien from being admitted to the United States, Congress indicated that an alien's motivation for joining the Communist Party is a critical factor. Communist Party membership may not be a bar to admission if it was necessary in order to obtain employment, food, or other "essentials of living." This latter phrase has been construed to excuse membership when it was required in order to retain a present position (as an officer in the Yugoslavian Army), *Matter of Mazar*, 10 I. & N. Dec. 79 (BIA 1962), or to enable an alien to move from a starvation-level salary to a subsistence-level salary. See *Matter of V—*, 8 I. & N. Dec. 554 (BIA 1960). Cf. *Berdo* v. *INS*, 432 F.2d 824, 832 (6 Cir. 1970). And where Communist Party membership entitled an alien to a tuition-free high school education (which he could not otherwise have afforded), it was also found to be within the proviso to section

212(a)(28) of the Act, 8 U.S.C. 1182(a)(28). See *Matter of Pust*, 11 I. & N. Dec. 228 (BIA 1965). Thus, in a Communist country or one that is dominated by the Communist Party, an alien who joins the Communist Party to obtain employment, retain employment, or even advance in employment commensurate with his background may be within the exception to the bar.

The assumption by the immigration judge that the respondent already had the necessities of life because he had a job before he became a Communist Party member is untenable, in our opinion. Since the immigration judge did not make a finding of credibility with regard to the respondent's testimony concerning his Communist Party membership,[2] it is not clear why he failed to take note of the respondent's claim that he would have lost his job if he had not become a Communist Party member.

At the same time, we do not believe that the respondent has presented sufficient evidence to justify his claim that he joined the Communist Party in order to obtain the necessities of life. In the memorandum of law furnished by the respondent there is a reference to the type of housing situation in which the respondent and his family lived prior to his joining the Communist Party. This type of detailed evidence was not presented at the hearing, however. Moreover, in previous cases involving the same issue, considerable background material has been supplied concerning the role of the Communist Party in a particular country and the hardships experienced by non-Party members. See, e.g., *Berdo* v. *INS*, *supra*; *Matter of Janus and Janek*, 12 I. & N. Dec. 866 (BIA 1968); *Matter of Mazar*, *supra*.

As a final matter, we must express our disagreement with the respondent's argument that the appeal should be sustained because the Government has failed to establish that his Communist Party membership met the "meaningful association" test applied by the Supreme Court of the United States in *Galvan* v. *Press*, 347 U.S. 522 (1954) and subsequent cases, *Rowoldt* v. *Perfetto*, 355 U.S. 115 (1957) and *Gastelum-Quinones* v. *Kennedy*, 374 U.S. 496 (1963).

In *Galvan* v. *Press*, *supra*, the issue was whether an alien could be deported due to "membership" in the Communist Party of the United States. The Court recognized that an alien's participation in the Communist Party might be so nominal that it would be unfair to attribute the consequences of "membership" to him.

---

[2] The immigration judge did suggest that he disbelieved the respondent's claim that he decided to remain in this country only after he had been here for several weeks. The existence of a "preconceived intent to remain" is an adverse factor in determining whether adjustment of status is warranted. However, the immigration judge's decision to deny adjustment in this case appears to be based solely on his finding that the respondent is inadmissible for permanent residence.

The "meaningful association" test originated in the context of deportation proceedings where the Government has the burden of proof. In an application for adjustment of status, the burden is squarely upon the respondent to show that he is not inadmissible under section 212(a)(28) of the Act, and, further, that he merits a favorable exercise of discretion.[3] As an admitted member of the Communist Party, the respondent must establish that his membership was involuntary or to obtain the "essentials of living."

Of course, the degree and extent of an alien's participation in Communist Party activities are relevant to determining whether or not his membership falls within the proviso to section 212(a)(28)(I)(i). Evidence of nominal or quiescent participation would strengthen an alien's claim that economic compulsion rather than ideological sympathy caused him to join the Communist Party. See, e.g., *Matter of Pust, supra*. However, the issue in this case is not whether the respondent's membership was nominal or meaningful but whether it was for the purpose of obtaining the necessities of life. See *Grzymala-Siedlecki v. United States*, 285 F.2d 836, 840 (5 Cir. 1961).

Based on the foregoing, the case will be remanded for further proceedings and the entry of a new decision.

ORDER: The record is remanded.

Board Member Louis P. Maniatis abstained from consideration of this case.

---

[3] In *Berdo v. INS, supra*, at 848, the court expressed the view urged by the respondent that in an adjustment of status case, the Government must show that an alien's membership in the Communist Party was "meaningful" if it is to render him inadmissible under section 212(a)(28). No other court has followed this line of reasoning and we specifically decline to do so here.